UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

7-ELEVEN, INC.,

       Plaintiff,                                            Case Number 19-12624

v.                                                        Honorable David M. Lawson

CJ-GRAND, LLC and ROBERT TAYLOR,

       Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S
## MOTION SUMMARY JUDGMENT

Plaintiff 7-Eleven, Inc., the franchisor of the nationally familiar "7-Eleven" branded convenience stores, filed this action under the Declaratory Judgment Act alleging that one of its franchisees breached the franchise agreement and asking for a determination that the agreement is valid and the defendants' conduct constitutes grounds for its immediate termination. Now that discovery has closed, 7-Eleven moves for summary judgment. The defendants have not identified any facts in the record that call into question the validity of the franchise agreement, nor have they pointed to anything in the record that casts doubt on the plaintiff's evidence that their conduct amounted to a material breach of the agreement justifying termination. Because there is no material fact dispute, and the termination provisions of the franchise agreement are not unconscionable, 7-Eleven is entitled to a judgment as a matter of law, and its motion will be granted.

I.

On December 2, 2013, defendant Robert Taylor, as principal of his entity CJ Grand, LLC, executed a franchise agreement and several associated agreements and addendums to obtain a franchise to operate the 7-Eleven store on East Jefferson Avenue in Detroit. The agreements

included a personal guaranty of performance that was executed by Taylor. The store property was leased by the plaintiff and sub-leased to the defendants. The sub-lease term naturally would expire in 2023. The plaintiff also supplied $100,000 worth of fixtures and equipment to furnish the store, such as coolers, shelves, a safe, and a cash register, all of which also were leased to the defendants.

Under the franchise agreement, the defendants assumed a variety of obligations and promised, among other things, that they would: (1) operate the store according to the requirements of the "7-Eleven System," and in a manner that would "enhance the 7-Eleven image," (2) carry, use, and offer for sale only products that are consistent with the type, quantity, quality, and variety allowed under the franchise agreement, (3) comply with all of 7-Eleven's standards and specifications for maintaining inventory, including proprietary products, (4) maintain the store premises and equipment in a clean, attractive, orderly, safe, and sanitary condition and in good repair and operating condition, (5) meet with 7-Eleven representatives once a week at the store during reasonable business hours, and (6) operate the store, including the food service facility, at all times in compliance with 7-Eleven's food service standards and in compliance with all applicable laws and regulations.

The defendants further agreed that the plaintiff's representatives had the right to inspect the store to determine if it was compliant with franchise requirements, and that the defendants reasonably would assist inspectors for that purpose. They also agreed to provide the plaintiff's representatives access to the store, equipment, inventory, supplies, receipts, cash logs and other financial records during any time when the store is in normal operation. They also agreed that none of the equipment would be disabled without prior written permission from the plaintiff. And they agreed to submit cash reports daily or at other times as specified by the plaintiff. Finally, in Section 26(b) of the agreement the defendants agreed that the franchise could be terminated,

immediately and without any opportunity to cure, if after the defendants received three separate notices of breaches of the agreement, a fourth notice of breach was delivered within two years after delivery of the first breach notice, regardless whether any of the breaches were cured.

Between April 2018 and April 2019, the plaintiff conveyed to the defendants six notices that they had breached various provisions of the franchise agreement. On April 3, 2018, the defendants were notified that they had failed to submit timely cash reports for March 1, 2018 through March 28, 2018. On the same date, they also were notified that the video recording system in the store had been offline for nearly five months (since December 17, 2017), denying 7-Eleven reasonable access to observe the premises during operational hours. A technician who came to service the equipment discovered that the video system, which apparently worked well on the premises, had been unplugged from the network. On August 9, 2018, the defendants were notified that they had denied the plaintiff remote access to the store premises because the video recorder had been offline again for over two months. And again, a technician discovered that the system was unplugged from the network. On the same date, the defendants were notified that they had failed to maintain the store by allowing unclean and out-of-stock conditions that were observed during a May 22, 2018 inspection. On January 28, 2019, and again on April 17, 2019, the defendants were notified that they had failed to maintain a minimum net worth of at least $15,000 in their franchise account.

Defendant Taylor met with 7-Eleven senior managers in July 2019 and promised to fix the problems that had been brought to his attention. However, the problems persisted, and on September 4, 2019, the defendants were notified of four more breaches based on further failures to submit timely cash reports, allowing the video recorder to go offline again, denying the

plaintiff's representative access to the back room of the store, and failing to meet with the plaintiff's representative at the store to discuss the ongoing problems.

The complaint pleads a single count for declaratory relief, requesting a determination that (1) section 26(b) of the franchise agreement is valid and enforceable, where it permits termination after notice of four incidents of material breach, as defined by the agreement, whether or not any of the breaches were cured, and (2) the 10 incidents of material breaches that are described in the complaint comprise "good cause" for termination of the franchise agreement under section 27 of Michigan's Franchise Investment Law, Mich. Comp. Laws § 445.1527.

The plaintiff filed its complaint for declaratory relief on September 6, 2019. The defendants initially failed to respond after being served with process, and their defaults were entered. However, the Court later granted the defendants' motion to set aside the defaults and issued a scheduling order. Discovery has closed, and the plaintiff timely filed its motion for summary judgment.

II.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes courts to adjudicate controversies between parties before a conflict blossoms into a larger and more costly claim. This statute permits suit when a controversy, although real and immediate, has not ripened to the point where one of the parties could invoke a coercive remedy, that is, a suit for damages or an injunction. *See* 12 James Wm. Moore et al., Moore's Federal Practice § 57.03[2] (3d ed.1999) (stating that the Act enables "parties to adjudicate disputes before either suffers great damage").

The Act also confers "unique and substantial discretion" for the Court *not* to exercise jurisdiction. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995). A court may decline to hear a declaratory judgment action even where jurisdiction exists. *See Brillhart v. Excess Ins. Co. of*

*Am.,* 316 U.S. 491, 494 (1942).  The general inquiry is whether "the judgment will serve a useful purpose in clarifying and settling the legal relationships in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Sunshine Corp.,* 74 F.3d 685, 687 (6th Cir.1996) (internal quotes omitted).

This case is an appropriate one for declaratory relief.  A decision here would settle the controversy between a franchisor and its franchisee over the rights and duties under the franchise agreement and state law, and it would serve a useful purpose by clarifying the legal relationship between the parties.

The plaintiff contends it is entitled to summary judgment on its complaint.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden.  *Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat–Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the

claim or defense"). The plaintiff therefore "must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion — by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim — by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1992) (footnotes omitted).

Because this is a diversity action, the Court must follow Michigan substantive law, as prescribed by the state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). If the Michigan Supreme Court has not addressed a determinative point of law, this Court "must predict how it would resolve the issue from 'all relevant data.'" *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (citing *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Ibid.* (citing *FL Aerospace v. Aetna Casualty and Surety Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990)).

The plaintiff alleges that the defendants breached the franchise agreement in ways that allow the plaintiff to cancel it before it expires by its own terms. To state a claim for breach of contract under Michigan law, a plaintiff first must establish the elements of a valid contract. *Pawlak v. Redox Corp.*, 182 Mich. App. 758, 765, 453 N.W.2d 304, 307 (1990). The elements of a valid contract in Michigan are "'(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (quoting *Hess v. Cannon Twp.*, 265 Mich. App. 582, 696 N.W.2d 742, 748 (2005)). Once a

valid contract has been established, the plaintiff then must prove (1) the terms of the contract, (2) breach of those terms by the defendant, and (3) injury to the plaintiff resulting from the breach. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003); *see also May v. CitiMortgage, Inc.*, 648 F. App'x 567, 571 (6th Cir. 2016).

The defendants agree that a valid contract exists with the plaintiff. And they do not quarrel with the allegations that they failed to perform their obligations under the agreement as recounted in the several notices of breach. However, this contract is a franchise agreement, which is subject to additional regulations. Michigan's Franchise Investment Law (MFIL) "prohibits any provision in a franchise agreement that 'permits a franchisor to terminate a franchise prior to the expiration of its term except for good cause.'" *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, No. 18-110, 2020 WL 1227047, at *9 (W.D. Mich. Mar. 13, 2020) (quoting Mich. Comp. Laws § 445.1527(c)). The defendants contend that their non-performance did not amount to "good cause" to terminate the agreement. And they say that because they were able to cure their several breaches, section 26(b) of the agreement, which allows 7-Eleven to terminate the relationship upon the fourth breach within two years despite cure by the franchisee, is unconscionable.

A.

The Michigan statute does not define "good cause" explicitly, but it does state that it "shall include the failure of the franchisee to comply with any lawful provision of the franchise agreement and to cure such failure after being given written notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure such failure." Mich. Comp. Laws § 445.1527(c). The defendants seize upon the "cure" language, arguing that they have made right all the faults for which they were cited in the ten breach notices.

Certainly, a franchise agreement that allows termination for a single breach that remains uncured for 30 days after notice would fall within the statute's safe harbor. But that does not mean other provisions also could not satisfy the good-cause requirement. In both an ordinary grammatical sense, and in customary legislative use, "[t]he word 'includes' is usually a term of enlargement, and not of limitation." *Samantar v. Yousuf*, 560 U.S. 305, 317 n.10 (2010) (quotations and citations omitted); *see also United States v. Clear,* 112 F. App'x 429, 431 (6th Cir. 2004) (interpreting Sentencing Guideline commentary construing the term "sophisticated means" as "incud[ing]" certain conduct as "illustrative, not exclusive."). And it has been observed that "the MFIL has been drafted broadly compared to a number of other state statutes which proscribe specific situations which constitute 'good cause.'" *Two Men & a Truck/Int'l Inc. v. Two Men & a Truck/Kalamazoo, Inc.*, 949 F. Supp. 500, 505 (W.D. Mich. 1996).

It is safe to say that 7-Eleven's "four strikes" provision satisfies the statute's good-cause requirement. It plainly is intended to address the problem of serial breachers. And the defendants' conduct in this case fits that mold. Within a two-year period, they committed "material breaches," as defined by section 26(a) of the franchise agreement, and cured them, only to fall out of compliance again — and again. Those "material breaches" included the following: failing properly to maintain the store premises, 26(a)(1)(d); "discontinuing using" 7-Eleven-issued video recording equipment without prior written permission from 7-Eleven, 26(a)(d)(e); failing to comply with inventory requirements and foodservice standards established by 7-Eleven, 26(a)(2)(e), (f); failing to maintain the required minimum net worth, 26(a)(4)(a); and failing to record or submit cash reports and other financial records as directed by the plaintiff, 26(a)(4)(b). The problem with the video monitoring system is a case in point. That system was offline for weeks at a time because it was not plugged into the network. When a technician remedied the

problem — thereby "curing" the breach — the defendants allowed it to be unplugged again, leaving it offline for another extended period.

The franchise agreement allows termination if there are four breaches within two years. Here there were ten.

The defendants argue that the breaches were not "material," although the agreement defines them as such. The lone case they cite to support that argument is *Walker & Co. v. Harrison*, 347 Mich. 630, 81 N.W.2d 352 (1957). But that decision does not warrant a contrary result because the holding of the case defines factors that are considered to assess whether an alleged failure of performance was sufficiently "material" as a matter of law to justify wholesale repudiation of a lease contract by the aggrieved party. That case has no bearing on the question whether a party to a contract may exercise an expressly provided right of immediate termination upon conditions precedent that explicitly are defined by the contract terms.

The record establishes as a matter of law that the defendants' failure of performance was sufficient to trigger the termination provision in section 26(b) of the franchise agreement.

B.

The defendants also ague that section 26(b) is unconscionable. In their brief, they posit that 7-Eleven routinely treats its franchisees with a heavy hand, and it has served these breach notices as a pretext to allow it to terminate a high-revenue franchise so it can market it at a substantial profit to another taker. Those are serious allegations indeed. But the defendants have not backed them up with any evidence in the record.

"Michigan law requires a party to demonstrate both procedural and substantive unconscionability" to establish that a contract term is invalid. *Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 321 (6th Cir. 2013). "'Procedural unconscionability is determined by evaluating

the bargaining power of the parties, their relative economic strength, and their alternative sources of supply.'" *Ibid.* (citing *Gianni Sport Ltd. v. Gantos, Inc.*, 151 Mich. App. 598, 601, 391 N.W.2d 760, 761-62 (1986)). "[T]he most important factors in determining procedural unconscionability are (1) whether the relatively weaker party had an alternative source with which it could contract, and (2) whether the contract term in question was in fact negotiable." *Id.* at 322.

The only evidence the defendants cite to support of their claim of procedural unconscionability is the following exchange from defendant Robert Taylor's deposition:

> Q. If there were any terms in this agreement that you were uncomfortable with, you could have just not signed it, right?
>
> A. *That's always an option*, but I didn't think that would have been the wisest option to take at the time.
>
> Q. Why?
>
> A. *Because I wanted to do business with 7-Eleven and it was this way or no way* at that point in time.

Robert Taylor dep., ECF No. 38-1, PageID.1358 (emphasis added). The defendants contend that the evidence shows that Taylor was faced with a take-it-or-leave-it proposition. Instead, it Taylor candidly admitted that he could have rejected the contract and walked away if he were unhappy with any of the terms. No evidence at all has been presented to establish the unavailability of other sources of potential franchises for convenience stores. And Taylor testified that he was looking at franchises in other areas as well. He chose this one, apparently, because he "wanted to do business with 7-Eleven." It is unlikely that 7-Eleven would have altered the terms of its standard franchise agreement. But Taylor retained the ultimate bargaining option: he could have walked away and pursued another franchise opportunity.

"'Whether a contractual provision is substantively unreasonable or unconscionable depends on the commercial setting, purpose and effect of the provision.'" *Pichey v. Ameritech*

*Interactive Media Servs., Inc.*, 421 F. Supp. 2d 1038, 1049 (W.D. Mich. 2006) (quoting *Michigan Ass'n of Psychotherapy Clinics v. Blue Cross & Blue Shield of Michigan*, 101 Mich. App. 559, 575, 301 N.W.2d 33, 41 (1981), *set aside in part on other grounds*, 411 Mich. 869, 306 N.W.2d 101). "'Reasonableness is the primary consideration.'" *Ibid.* (quoting *St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co. of Michigan*, 115 Mich. App. 278, 284, 320 N.W.2d 244, 247 (1982)). "[A] contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience." *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 144, 706 N.W.2d 471, 475 (2005).

Is 7-Eleven's four-strikes termination provision unreasonable? Certainly not as applied in this case. As noted above, the provision reasonably addresses the violation-cure-violation cycle that is evident here. The franchisor no doubt enjoyed superior power when deciding whether to close the deal or to pull the plug. But "merely because the parties have different options or bargaining power, unequal or wholly out of proportion to each other, does not mean that the agreement of one of the parties to a term of a contract will not be enforced against him; if the term is substantively reasonable it will be enforced." *Allen v. Michigan Bell Tel. Co.*, 18 Mich. App. 632, 638, 171 N.W.2d 689, 692 (1969). "If a termination clause appears reasonable to [the] Court, disparity in bargaining power between the parties will not make the clause unenforceable." *Gianni Sport Ltd. v. Gantos, Inc.*, 151 Mich. App. 598, 601, 391 N.W.2d 760, 76 (1986). And it should be remembered that the defendants had another option available to them within the franchise relationship: compliance. Instead, they found themselves in material breach ten times within two years, which subjects them to the consequences laid out in section 26(b) of the agreement. There is nothing unreasonable about the clause in question here.

III.

The undisputed evidence in the record establishes that the defendants engaged in at least four material breaches of the franchise agreement over a two-year period, those breaches are sufficient to trigger the termination provision in section 26(b) of the franchise agreement, section 26(b) is valid and enforceable, and the incidents of material breaches that are described in the complaint comprise "good cause" for termination of the franchise agreement under section 27 of Michigan's Franchise Investment Law, Mich. Comp. Laws § 445.1527.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment (ECF No. 36) is **GRANTED**.   Separate judgment will enter.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date:   February 8, 2021